**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                    )
FAISAL MUHIDIN TAHLIL,              )
                                    )
        Petitioner,                 )
                                    )    Civil Action
v.                                  )    No. 20-10847-PBS
                                    )
ANTONE MONIZ,                       )
                                    )
        Respondent.                 )
_____)
```

**MEMORANDUM AND ORDER**

May 20, 2020

Saris, D.J.

**INTRODUCTION**

Petitioner Faisal Muhidin Tahlil brings this habeas petition seeking relief pursuant to the Court's declaratory judgment in Reid v. Donelan, 390 F. Supp. 3d 201 (D. Mass. 2019) ("Reid"). Petitioner argues that his mandatory detention under 8 U.S.C. § 1226(c) has become unreasonably prolonged and that he is entitled to a bond hearing before an immigration judge.

For the reasons stated below, the Court hereby **DENIES** without prejudice Tahlil's petition (Docket No. 1).

**LEGAL STANDARDS**

Under 8 U.S.C. § 1226(c), the Government "shall take into custody" any noncitizen who is inadmissible or deportable based

1

on a conviction for "certain crimes of moral turpitude, controlled substance offenses, aggravated felonies, firearm offenses, or acts associated with terrorism." Reid, 390 F. Supp. 3d at 213 (quoting 8 U.S.C. § 1226(c)(1); Gordon v. Lynch, 842 F.3d 66, 67 n.1 (1st Cir. 2016)). The statute does not allow for conditional release on bond, except in the limited circumstance of witness protection. See 8 U.S.C. § 1226(c)(2).

Nonetheless, "mandatory detention under § 1226(c) without a bond hearing violates due process when an alien's individual circumstances render the detention unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens." Reid, 390 F. Supp. 3d at 219.

In Reid v. Donelan, this Court certified a class of "[a]ll individuals who are or will be detained within the Commonwealth of Massachusetts or the State of New Hampshire pursuant to 8 U.S.C. § 1226(c) for over six months and have not been afforded an individualized bond or reasonableness hearing." No. 13-30125-PBS, 2018 WL 5269992, at *8 (D. Mass. Oct. 23, 2018). Pursuant to this Court's subsequent declaratory judgment, any member of the Reid class may "bring a habeas petition in federal court to challenge his detention as unreasonably prolonged." Reid, 390 F. Supp. 3d at 227.

The reasonableness of a petitioner's continued detention without a bond hearing under § 1226(c) must be analyzed on a

2

case-by-case basis. See id. at 219. The following nonexclusive factors are relevant in determining the reasonableness of continued mandatory detention:

> [T]he total length of the detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order.

Id. (citation omitted).

Of these factors, the length of the petitioner's detention is "the most important." Id. Mandatory detention is "likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics." Id. Detention of less than one year may be unreasonable "if the Government unreasonably delays or the case languishes on a docket." Id. at 220.

If a petitioner's mandatory detention has been unreasonably prolonged, the petitioner "is entitled to a bond hearing before an immigration judge." Id. At that hearing,

> [T]he Government [must] prove that the alien is either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence. The immigration court may not impose excessive bail, must evaluate the alien's ability to pay in setting bond, and must consider alternative conditions of release such as GPS monitoring that reasonably assure the safety of the community and the alien's future appearances.

Id. at 228.

**FACTS**

I. **Legal Status and Criminal History**

Petitioner is a citizen of Somalia. He entered the United States in 2000 as a refugee at four years old and adjusted his status to lawful permanent resident in 2009, retroactive to his entry date.

Petitioner's criminal history includes several charges that were later dismissed, including for aggravated assault in 2011 and for theft in 2012.

Petitioner also has a number of convictions. On January 7, 2016, Petitioner was convicted of domestic violence assault and was sentenced to 354 days of imprisonment and two years' probation. On August 10, 2016, Petitioner was convicted of unlawful possession of a scheduled drug and ordered to pay a fine.

On March 9, 2017, Petitioner was charged with two counts each of unlawful sexual contact, assault, and criminal threatening. On June 11, 2017, Petitioner was charged with five counts of unlawful possession of a scheduled drug, as well as and trafficking in prison contraband. In November 2017, Petitioner pled guilty to felony assault and unlawful possession of Clonazepam and all remaining charges were dismissed. For the assault charge, Petitioner received a five-year sentence, three suspended, and four years' probation. For the possession charge,

he was sentenced to six months' imprisonment and ordered to pay a fine. Petitioner served 10 months on the two convictions and was then released for good behavior.

## II.  Immigration Detention and Proceedings

Petitioner has been held in immigration detention since August 27, 2019 at Plymouth County Correctional Facility. He is subject to mandatory detention because of his 2017 controlled substance offense related to possession of Clonazepam.

The Boston Immigration Court scheduled Petitioner's first detained hearing on September 26, 2019. The immigration judge ("IJ") then reset the Petitioner's case twice to give him time to seek an attorney.

On October 31, 2019, Petitioner appeared for another hearing, where he admitted to the allegations and charges in his Notice to Appear. The IJ determined the forms of relief for which Petitioner might be eligible and provided Petitioner an application. On November 26, 2019, the matter was reset because the IJ was not available, but Petitioner's family appeared and filed Petitioner's application for immigration relief with the Court.

On December 4, 2019, Petitioner appeared for a hearing represented by counsel for the first time. Counsel sought a continuance in order to apply for an additional form of relief, which was filed on December 19, 2019. The IJ set a merits

hearing for February 4, 2020 but Petitioner was later granted two continuances due to medical issues experienced by Petitioner's counsel. The second motion to continue was granted over ICE's objection.

On March 4, 2020, the IJ heard testimony and argument in support of Petitioner's applications for relief. On March 27, 2020, the IJ issued a written decision denying Petitioner's applications for relief from removal and ordered Petitioner removed to Somalia. Among other findings, the IJ determined that Petitioner was unable to meet his burden of proof as to the discretionary forms of relief for which he had applied. The IJ found the positive factors in Petitioner's case – namely, the length of his residence and his family ties, including two U.S. citizen children – were outweighed by negative factors – including Petitioner's admitted drug use and dealing without evidence of rehabilitation, his lack of stable employment history or community involvement, and his "highly concerning" criminal history, which showed "increasingly serious assaultive behavior spanning many years." Dkt. 12-3 at 10-13.

On April 28, 2020, Petitioner filed a notice of appeal with the Board of Immigration Appeals ("BIA"). On May 6, 2020, ICE filed a motion to expedite with the BIA. The appeal remains pending and to the Court's knowledge no briefing schedule has been set.

**DISCUSSION**

Petitioner argues he is entitled to a bond hearing before an immigration judge because his mandatory detention is "unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens." Reid, 390 F. Supp. 3d at 219.

## I. Length of Detention

The length of a petitioner's mandatory detention is "the most important factor" in determining its reasonableness. Id. Detention of over a year is "likely to be unreasonable," but "[p]eriods of detention directly attributable to an alien's dilatory tactics should not count in determining whether detention has exceeded the one-year mark." Id. at 219-20.

Here, Petitioner has been detained since August 27, 2019 or approximately nine months. His detention falls below the one-year mark and is not yet presumptively unreasonable.

## II. Other Relevant Factors

In assessing the reasonableness of Petitioner's mandatory detention, the Court also considers "[1] the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); [2] the period of the detention compared to the criminal sentence; . . . and [3] the likelihood that the proceedings will culminate in a final removal order." Reid, 390 F. Supp. 3d at 219 (numbering added). Detention under

a year may also be unreasonable "if the Government unreasonably delays or the case languishes on a docket." Id. at 220.

Although Petitioner's appeal is at an early stage and so his proceedings are not likely to conclude in the near future, the other Reid factors all weigh against a finding of unreasonableness at this time. The IJ ordered Petitioner's deportation after careful consideration of the positive and negative equities in Petitioner's case. This is the Court's best guide in determining the likelihood that the proceedings will conclude in a final removal order. In addition, the ten months that Petitioner spent in criminal custody currently exceeds his time in immigration detention. Furthermore, the Government has not unreasonably delayed Petitioner's proceedings, nor has his case languished on a docket. Only a single short delay from November 26, 2019 to December 4, 2019 due to the IJ's unavailability is attributable to the Government in this case.

Finally, Petitioner argues that the current COVID-19 pandemic renders his continued detention without a bond hearing unreasonable under Reid. While the Court may weigh the impact of COVID-19 in deciding whether proceedings are unreasonably prolonged under the Due Process clause, that factor does not outweigh the others in the Reid analysis here. Petitioner has not shown that he suffers from any preexisting condition recognized by the CDC to raise the risk of severe illness from

8

the COVID-19 virus. See Centers for Disease Control & Prevention, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed May 19, 2020). To the extent Petitioner raises an independent Due Process claim, he cannot show that his detention is excessive in relation to legitimate governmental objectives. Petitioner is not in a high-risk category and there are currently no detainees confirmed as COVID-19 positive within the immigration detention unit at Plymouth. In addition, the Government has a legitimate objective in detaining Petitioner, whose lengthy criminal history includes several violent attacks and incidents of domestic violence.

## ORDER

Petitioner's mandatory detention under 8 U.S.C. § 1226(c) has not been unreasonably prolonged and Petitioner therefore is not entitled to a bond hearing before an immigration judge at this time. The petition for a writ of habeas corpus [Docket No. 1] is accordingly **DENIED** without prejudice.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge